# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | | |
|---|---|---|
| CHRISTOPHER JAMES MANSOORI (#2019-1007189), | ) ) ) | |
| Plaintiff, | ) ) ) | No. 22-cv-01635 |
| v. | ) ) | Judge Andrea R. Wood |
| JANE DOE, et al., | ) ) ) | |
| Defendants. | ) | |

## ORDER

Plaintiff may proceed with his complaint [1] consistent with his order. The Clerk of Court is directed to: (1) file Plaintiff's complaint; (2) issue summons for service of the complaint on Defendant Sergeant Williams; (3) dismiss all other Defendants; and (4) send Plaintiff one blank USM-285 service form, filing instructions, and a copy of this order. Because Plaintiff has paid the filing fee and is not proceeding *in forma pauperis*, he is not necessarily entitled to service at government expense. Fed. R. Civ. P. 4(c)(3). Additionally, Plaintiff has not demonstrated that he cannot pay the required deposit to the U.S. Marshal. Plaintiff must either: (1) serve the Defendant himself; (2) retain a private process server to serve Defendant; or (3) employ the services of the U.S. Marshal to serve Defendant. The U.S. Marshal is directed to send Plaintiff the request for payment of the deposit to effectuate service (service costs generally range between $65.00 and $250.00 per location). If Plaintiff elects to employ the services of the U.S. Marshal, he must pay the required deposit and submit the completed USM-285 service form by 8/29/2022; the U.S. Marshal will not take further action until the deposit has been paid and the USM-285 service form is returned. Plaintiff also must promptly submit a change-of-address notification if he is transferred to another facility or released. If Plaintiff fails to keep the Court informed of his address, this action will be subject to dismissal for failure to comply with a Court order and for failure to prosecute. The Clerk is directed to send a copy of this order to Plaintiff and the U.S. Marshal.

## STATEMENT

Plaintiff Christopher Mansoori, a detainee at Cook County Jail, has brought this action *pro se* under 42 U.S.C. § 1983, alleging that jail staff members and assistant state's attorneys infringed on his First Amendment rights and citing delays in receiving his mail, lack of privacy in his legal mail, and retaliation for his legal filings. (*See* Dkt. No. 6.) Mansoori's complaint is now before the Court.

**I.**

Under 28 U.S.C. § 1915A, the Court is required to screen prisoner complaints and to dismiss the complaint, or any claims therein, if the complaint or claim is frivolous or malicious, fails to state a claim on which relief may be granted, or seeks monetary relief against an immune defendant. *See Jones v. Bock,* 549 U.S. 199, 214 (2007); *Turley v. Rednour*, 729 F.3d 645, 649 (7th Cir. 2013). Courts screen prisoner complaints by applying the same standard as for motions to dismiss under Federal Rule of Civil Procedure 12(b)(6). *Maddox v. Love*, 655 F.3d 709, 718 (7th Cir. 2011). A complaint must include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The short and plain statement must "give the defendant fair notice of what the claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 555 (2007) (citation omitted). The statement also must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face," which means that the pleaded facts must show there is "more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). When screening a *pro se* plaintiff's complaint, courts construe the plaintiff's allegations liberally. *Erickson v. Pardus,* 551 U.S. 89, 94 (2007) (per curiam). Courts also must "accept all well-pleaded facts as true and draw reasonable inferences in the plaintiff's favor." *Roberts v. City of Chicago*, 817 F.3d 561, 564 (7th Cir. 2016).

In this case, Mansoori alleges that, on several occasions beginning in March 2020, his outgoing mail from Cook County Jail was withheld for two to six months at a time. (Dkt. No. 6 at 14, 15.) Mansoori attributes the delay to mailroom staff intentionally withholding his mail. (*Id.*) Mansoori also alleges that in the beginning of January, he requested medical records from Northwestern Memorial Hospital, which he hoped to receive prior to a court hearing on January 24, 2021. (*Id.*) He received the medical release forms inside of a Northwestern Memorial envelope that had been postmarked before the hearing date along with an envelope from the State's Attorney's Office, postmarked after the hearing date. (*Id.*) Mansoori alleges that John Doe Mailroom staff intercepted the hospital's mailing to prevent him from including hospital records in his motion for release on bond. (*Id.*) The mailroom staff also gave the mailing to the State's Attorney's Office. (*Id.* at 16.)

Further, on May 20, 2021, Mansoori received mail from the Illinois Court of Claims. (*Id.*) The mail was opened outside of his presence by mailroom staff to gather intelligence. (*Id.*) Five days later, Sergeant Williams marked in the legal mail logbook that Mansoori was not on the tier, resulting in Mansoori's extremely confidential legal mail from his attorney, George Pontikes, being returned to sender. (*Id.*) However, Mr. Pontikes never received the mailing back. (*Id.*) Mansoori maintains that the facts that he never left his tier and Mr. Pontikes never received the mailing back, indicate that Sergeant Williams used his authority to block or intercept Mansoori's legal mail. (*Id.* at 17.) A few days after this occurrence, Sergeant Williams transferred Mansoori's cellmate to another tier and moved another inmate into Mansoori's cell. (*Id.*) During the transfer, Sergeant Williams and four other officers aggressively hauled the inmate into Mansoori's cell and forcefully placed the inmate on the ground. (*Id.*) Sergeant Williams then looked at Mansoori and

stated, "You're going to get that lawsuit you're looking for." (*Id*.) Another officer proceeded to punch the other inmate as hard as he could in his face. (*Id*.)

Next, on August 26, 2021, Mansoori handed a correctional officer an envelope containing 35 pages of legal documents addressed to Mr. Pontikes. (*Id*. at 18.) However, his attorney never received those documents. (*Id*.) Mansoori believes mailroom staff intercepted the outgoing mail to delay the proceedings. (*Id*.) Mansoori's attorney was forced to pick up a copy of the documents in person. (*Id*.)

Mansoori also makes allegations against internal affairs officers. (*Id*. at 19.) Mansoori alleges that on January 25, 2022, three internal affairs officers brought around legal mail, asking if Mansoori was expecting any. (*Id*.) Mansoori noticed all of the legal mail had already been opened. (*Id*.) He also noticed Mr. Pontikes's unique paper and letter head. (*Id*.) He notified the internal affairs officers, but they acted as if drugs were on the envelopes and kept the documents. (*Id*.) The officers eventually gave Mansoori copies of the papers contained in the envelope, but the internal affairs officers' actions were an invasion of privacy and delayed federal proceedings. (*Id*. at 20.) Mansoori seeks monetary damages and an injunction prohibiting jail staff from interfering with his mail and exhibiting retaliatory conduct. (*Id*. at 25.)

**II.**

Mansoori may proceed on his retaliation claim against Sergeant Williams. To prevail on a First Amendment retaliation claim, Mansoori must show: (1) he engaged in protected activity; (2) he suffered a deprivation likely to deter future protected activity; and (3) his protected activity was a motivating factor in the defendants' decision to retaliate. *Perez v. Fenoglio*, 792 F.3d 768, 783 (7th Cir. 2015). The Court finds that Mansoori's allegations support an inference that Sergeant Williams's alleged conduct in bringing a fellow inmate into Mansoori's cell, beating that inmate, and directing intimidating comments toward Mansoori regarding his lawsuits warrant a further inquiry into Mansooris claim for retaliation.

Next, the Supreme Court has recognized that inmates have protected First Amendment interests in both sending and receiving mail. *Rowe v. Shake*, 196 F.3d 778, 782 (7th Cir. 1999) (citing *Thornburgh v. Abbott*, 490 U.S. 401 (1989), and *Turner v. Safley*, 482 U.S. 78 (1987)). "On the other hand, prison security 'is a sufficiently important governmental interest to justify limitations on a prisoner's first amendment rights.'" *Rowe*, 196 F.3d at 782 (quoting *Gaines v. Lane*, 790 F.2d 1299, 1304 (7th Cir. 1986)). A prison regulation or practice that affects a prisoner's First Amendment right with respect to free speech "is valid if it is reasonably related to legitimate penological interests." *Turner*, 482 U.S. at 89. Accordingly, courts have held that jail officials may inspect incoming or outgoing non-legal mail (even mail from courts) for contraband. *Rowe*, 196 F.3d at 782; *Antonelli v. Sheahan*, 81 F.3d 1422, 1431 (7th Cir. 1996).

"An inmate's legal mail, however, is entitled to greater protections because of the potential for interference with his right of access to the courts." *Kaufman v. McCaughtry*, 419 F.3d 678, 685–86 (7th Cir. 2005) (citing *Rowe*, 196 F.3d at 782). "The Fourteenth Amendment guarantees

3

meaningful access to courts, [and] . . . the opportunity to communicate privately with an attorney is an important part of that meaningful access." *Guajardo-Palma v. Martinson*, 622 F.3d 801, 802 (7th Cir. 2010) (quoting *Dreher v. Sielaff*, 636 F.2d 1141, 1143 (7th Cir.1980)); *see also Merriweather v. Zamora*, 569 F.3d 307, 315–17 (6th Cir. 2009); *Al-Amin v. Smith*, 511 F.3d 1317, 1325-35 (11th Cir.2008)). "Thus, when a prison receives a letter for an inmate that is marked with an attorney's name and a warning that the letter is legal mail, officials potentially violate the inmate's rights if they open the letter outside of the inmate's presence." *Kaufman*, 419 F.3d at 686 (citing *Wolff v. McDonnell*, 418 U.S. 539, 577 (1974); *Castillo v. Cook County Mail Room Dep't*, 990 F.2d 304, 305–06 (7th Cir.1993)).

Here, with regard to Mansoori's allegations that his legal mail was opened prior to him receiving it, he makes no assertion that the envelopes were marked with phrases such as: "legal mail," "confidential," "privileged," or "special mail." *See Harrison v. County of Cook, Ill.*, 364 Fed. Appx. 250, 253 (7th Cir. 2010) (mail from an attorney not clearly marked as legal did not give rise to a claim that legal mail was opened outside a prisoner's presence). "[F]or a letter to be treated as special mail, the sender must put his name on the envelope ***and*** mark it with the legend quoted above." *Id.* (emphasis added) (citing 28 C.F.R. § 540.2(c) (the sender of legal mail is supposed to mark on the envelope: "Special Mail-Open only in the presence of the inmate"); *see also* § 540.18(a)). Without some marking indicating the letter is legal or special mail, "staff may treat the mail as general correspondence." 28 C.F.R. § 540.18(b). "In the case of letters from attorneys, the inmate is responsible for advising his attorney to put the attorney's name and the legend on the envelope if the attorney wants the letter to be treated as special mail." *Martin*, 830 F.2d at 77 (citing § 540.19(b)). Accordingly, Mansoori's claims related to his legal mail being opened in his absence are dismissed without prejudice.

Mansoori's allegations regarding delays in his mail reaching recipients are also dismissed. *See Rowe*, 196 F.3d at 782 (concluding that "relatively short-term and sporadic" delays in receiving more than eighteen pieces of mail did not violate First Amendment); *Schroeder v. Drankiewicz*, No. 12-2305, 2013 WL 1222750 at *3 (7th Cir. Mar. 26, 2013); *Ahlers v. Rabinowitz*, 684 F.3d 53, 64–65 (2d Cir. 2012) (concluding that eleven instances of delayed or withheld mail over four months did not state First Amendment claim); *DeLeon v. Doe*, 361 F.3d 93, 94 (2d Cir.2004) (concluding that prison staff's loss of letter containing birthday card did not state a First Amendment claim). Accordingly, Mansoori's claims related to his mail being opened in his absence are dismissed without prejudice.

Mansoori also appears to allege that Assistant State's Attorneys violated his constitutional rights by obtaining his medical record from Northwestern Memorial Hospital. However, even assuming Mansoori could properly allege a cause of action here, prosecutors are absolutely immune from liability 'for their core prosecutorial actions. *Brunson v. Murray*, 843 F.3d 698, 704 (7th Cir. 2016) (quoting *Lewis v. Mills*, 677 F.3d 324, 330 (7th Cir. 2012), citing *Hartman v. Moore*, 547 U.S. 250, 261–62 (2006) (a prosecutor "is absolutely immune from liability for the decision to prosecute")). "Core actions covered by absolute prosecutorial immunity are those 'intimately associated with the judicial phase of the criminal process.'" *Brunson*, 843 F.3d at 704. "[A]bsolute immunity shields prosecutors even if they act maliciously, unreasonably, without

4

probable cause, or even on the basis of false testimony or evidence." *Smith v. Power*, 346 F.3d 740, 742 (7th Cir. 2003). None of the allegations Mansoori alleges suggest that any prosecutor acted outside of the purview of their role as a prosecutor. Therefore, they enjoy absolute immunity.

The Court directs the Clerk of Court to issue summonses for service of the complaint on Defendant Williams. Because Mansoori has paid the filing fee and is not proceeding *in forma pauperis*, he is not necessarily entitled to service at government expense. Fed. R. Civ. P. 4(c)(3). Therefore, Mansoori must either: (1) serve Defendant himself; (2) retain a private process server to serve Defendant; or (3) employ the services of the U.S. Marshal to serve Defendant. The U.S. Marshal is directed to send Mansoori the request for payment of the deposit to effectuate service (service costs generally range between $65.00 and $250.00 per location). If Mansoori elects to employ the services of the U.S. Marshal, he must pay the required deposit; the U.S. Marshal will not take further action until the deposit has been paid. Failure to effect service by the date set forth above may result in dismissal of this case.

The Court instructs Mansoori to file all future papers concerning this action with the Clerk of this Court in care of the Prisoner Correspondent. Any letters or other documents sent directly to a judge or that otherwise fail to comply with these instructions may be disregarded by the Court or returned to Mansoori. He is advised that he must promptly submit a change-of-address notification if he is transferred to another facility or released. Failure to do so may lead to dismissal of this action for failure to comply with a Court order and for want of prosecution.

Date: July 18, 2022

Andrea R. Wood
United States District Judge