## IN THE UNITED STATES DISTRICT COURT FOR THE
## NORTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| Christopher James Mansoori (#2019-1007189), | ) ) | |
| | ) | |
| Plaintiff, | ) | Case No. 22 C 1635 |
| | ) | |
| v. | ) | |
| | ) | Magistrate Judge Jeffrey Gilbert |
| Sergeant Williams, | ) | |
| | ) | |
| Defendant. | ) | |

## **ORDER**

Plaintiff Christopher James Mansoori's ("Plaintiff") motion to compel [54] is granted in part but largely denied for the reasons set forth in this Order.

## **STATEMENT**

Currently before the Court is Plaintiff's motion to compel discovery responses from Defendant Sergeant Williams ("Motion"). (Dkt. 54.) Defendant has responded to Plaintiff's discovery requests (Dkt. 60) and to Plaintiff's Motion. (Dkt. 58.) The matter therefore is ripe for decision.

The Court must first address the claims and defenses remaining in this case to fully address Plaintiff's Motion. Plaintiff, a pretrial detainee currently in the custody of the Cook County Sheriff and residing in the Cook County Jail, originally named as Defendants Sergeant Williams, Officer Amador, Superintendent McCroy, and several unidentified jail mailroom staff and assistant state's attorneys. (Dkt. 1.) Asserting fifteen counts, Plaintiff originally alleged, among other things, that letters he sent to relatives and his attorney were intentionally delayed or not delivered; mail from his attorney was not delivered and Williams falsely wrote in the mail log that Plaintiff was "not on the tier" when that mail was supposed to be delivered; and mail from an Illinois court and Northwestern Medical Center was delayed and opened outside his presence. *Id.* at 14-24. Plaintiff also alleged that, several days after not receiving mail from his attorney, Defendant Williams, in retaliation for Plaintiff filing lawsuits, had another inmate forcibly dragged into Plaintiff's cell and beaten in front of Plaintiff. When the inmate was being dragged out of the cell, Williams allegedly said to Plaintiff: "You're going to get that lawsuit you're looking for alright." *Id.* at 7-8. Plaintiff believes Williams intended to intimidate Plaintiff from filing additional suits. *Id.*

The Court conducted its required 28 U.S.C. § 1915A initial review of Plaintiff's complaint in July 2022 and dismissed Plaintiff's claims about mail being delayed, undelivered, and opened outside his presence, but it allowed his claim about Williams intimidating Plaintiff from filing additional suits by having another inmate beaten in front of him to proceed. (Dkt. 7); *see also* (Dkt.

30) (the Court's May 24, 2023 order denying Defendant Williams's motion to dismiss reiterated that Plaintiff was being allowed to proceed only with his retaliation claim against Williams when he allegedly had another inmate beaten in front of Plaintiff and then made intimidating remarks when the beaten inmate was removed from Plaintiff's cell). Therefore, as presently framed, this case involves one claim of retaliation and intimidation by Defendant Williams. It does not involve claims about the delivery or delayed delivery of mail or the alteration of entries in mail delivery log books.

The parties in this case and in Plaintiff's fourteen other cases pending before this Court have been conducting discovery for months. Last month, Plaintiff filed the instant Motion to compel responses to several of his discovery requests served in this case. (Dkt. 54.) He asserts: (1) the copy of the mail logbook Defendant produced to him must have been altered since it no longer has an entry "not on tier" that Plaintiff previously saw; (2) Defendant has failed to produce bodycam footage of officers dragging inmate Jimmy Lemon into Plaintiff's cell and then out of the cell; (3) other footage exists of Lemon being dragged onto and later off of Plaintiff's tier that has not been produced; and (4) Defendant "evasively" objected to every interrogatory Plaintiff propounded. (Dkt. 54.) As discussed above, discovery related to the logbook entries is beyond the scope of this case as limited by the Court's initial review. Plaintiff's other discovery requests, however, are properly within the scope of permissible discovery in this case.

As an initial matter, Defendant Williams points out that Plaintiff did not include in his Motion a statement that he and defense counsel had met and conferred about the discovery issues Plaintiff now is raising, nor did Plaintiff include a copy of Defendant's interrogatory responses he asserts are deficient. *Id.*; *see also* N.D. Ill. Local Rule 37.2 (a court cannot consider a motion to compel discovery "unless the motion includes a statement (1) that after consultation in person or by telephone and good faith attempts to resolve differences they are unable to reach an accord, or (2) counsel's attempts to engage in such consultation were unsuccessful due to no fault of counsel's). Defendant argues the Court should deny Plaintiff's motion for these reasons. During a court hearing on April 24, 2024, however, Plaintiff said he had discussed his issues with Defendant's discovery responses with the Assistant State's Attorney who was responsible for this case (and all of his other cases) before she withdrew and the current Assistant State's Attorney took over his cases and they were unable to resolve the matter. The Court takes Plaintiff at his word which means that he may have complied with Local Rule 37.2. The Court reminded Plaintiff during the April 24, 2024, hearing (and also does so here) that he needs to include a Local Rule 37.2 certification in his discovery motions. Under these circumstances, however, the Court will not deny Plaintiff's instant motion for failure to include that certification when he filed it. Finally, and in any event, the briefing and argument on Plaintiff's Motion make clear that the parties would not have been able to resolve the issues raised in Plaintiff's Motion with more talk.[1]

---

[1] Defendant Williams is represented both by private counsel (attorneys with the firm DeVore & Radunsky) and by an Assistant Cook County State's Attorney. Private counsel responded to Plaintiff's motion to compel and discovery requests. Plaintiff says he met and conferred with an Assistant State's Attorney (who is no longer appearing in this case) about the matters contained in his motion to compel which may be why his private counsel was unaware of the conferral that Plaintiff says took place. But this is speculation on the Court's part. Moreover, if Plaintiff - here proceeding *pro se* - spoke with the wrong defense counsel for Defendant Williams about the matters in his motion to compel, the Court is not inclined to hold that against him and categorically deny his motion on that ground in any event.

On the merits, Defendant Williams says he produced a pdf copy of the original logbook that Plaintiff is seeking, and it does not contain the "not on tier" entry Plaintiff alleges he saw in the logbook. Although Plaintiff's claim that Defendant made a false entry in the logbook was dismissed earlier in this case, if Defendant saw mail addressed to Plaintiff from an attorney, that fact potentially is relevant to Plaintiff establishing Defendant's knowledge that Plaintiff had filed lawsuits and was engaged in communications about them. The logbook thus may be relevant for Plaintiff's retaliation by intimidation claim. In any event, however, Defendant says there are no logbook entries that contain the language Plaintiff alleges he saw. (Dkt. 58) ("Plaintiff saw the entry written and signed by St. Williams, with 'Not on tier' marked next to Plaintiff's name in the legal mail logbook."). Since Defendant says he produced a copy of the original logbook and it does not contain the entry that Plaintiff alleges he saw in there, Defendant is not required to do anything more to respond to Plaintiff's discovery request. Plaintiff would have to pursue other discovery vehicles (such as, for example, depositions on oral or written questions) on his theory that Defendant Williams made the entry he saw in the logbook or that the original logbook was altered to delete it. For these reasons, Plaintiff's motion is denied as to the logbook.

Defendant Williams also says that after due investigation, there is no body worn camera footage related to any of the incidents that are properly a part of this case nor is there any other video footage of incidents relevant to this case. (Dkt. 58, pg. 1-2.) Plaintiff says Defendants Williams and Amador both were wearing body cameras during the incident in question in his cell, so if there is no body camera footage, then they either wrongfully did not activate their cameras in contravention of Cook County Jail policy or they destroyed allegedly incriminating evidence which merits sanctions. If the officers did not activate their body cameras, then it stands to reason there is no relevant camera footage to produce. (Whether or not it was against jail policy not to activate body cameras is a different question beyond the scope of this order and not relevant to the question addressed here as to whether evidence exists that Defendant has not produced.) Again, if Defendant conducted a thorough investigation and did not uncover any bodycam footage of any of the incidents in this case, that ends the matter in terms of Plaintiff's instant motion to compel as to bodycam footage. There is no evidence as of now that any bodycam footage was destroyed. Plaintiff retains his arguments about the absence of bodycam footage of the incidents at issue in this case, and he can examine Defendants about that subject at deposition if he wants to do so. As with the logbook entries, however, the Court cannot order a party to produce evidence the party says does not exist after due investigation. And there is no remedy for alleged destruction of evidence without anything to indicate that evidence was destroyed. Therefore, Plaintiff's motion is denied with respect to the bodycam footage.

During the hearing on April 24, 2024, however, defense counsel was not as clear about whether all efforts to uncover any other video footage that could have captured the events in question have been exhausted, such as video footage from cameras on the tier on which Plaintiff alleges another detainee (now identified as Jimmy Lemon) was beaten in front of him or from cameras on the tier where he alleges officers "hauled" Lemon to Plaintiff's cell. (Dkt. 54, at pg. 2) ("Plaintiff requested the footage of the now identified Jimmy Lemon being hauled onto the tier of M2 of Division 4 and off of that tier. Plaintiff seeks the footage from tier I2 where Lemon was originally taken from by Defendant Williams and others."). Defendant did not completely address

this aspect of Plaintiff's request for production or Motion as to video footage other than from body cameras. In response to the Court's questions during the April 24, 2024, hearing, defense counsel offered to circle back on whether any such video exists and report back to Plaintiff and to the Court in that regard.

As Plaintiff explained at the April 24, 2024 hearing, he has some reason to believe stationery camera video footage relating to at least a portion of his claim may have existed at one time. The incident report about the use of force against Jimmy Lemon states "Yes" in response to the question on the form, "Stationary Camera Capture Footage?" (Dkt. 58-3, pg. 4.) But the supervisory officer who issued written findings also went on to note: "there is no footage available for the actual incident." *Id.* The incident report includes the numbers of the relevant cameras and states that it was viewed. *Id.* This is somewhat confusing on the issue of whether other video footage may exist or may have existed at one time and it at least bears further inquiry. Therefore, Plaintiff's motion is granted to the limited extent that Defendant, by counsel, will nail down whether a thorough search was conducted for any such video footage, determine whether any relevant video footage existed from any source other than body cameras at any time, determine whether the footage still exists and, if not, what happened to it, and produce whatever evidence still exists, if any. The parties shall include that information in their next status report due on May 24, 2024.[2]

Finally, Plaintiff complains that Defendant objected to every single interrogatory he served, answered evasively when an answer was provided, and Plaintiff argues that is unacceptable and uncooperative. At the hearing on April 24, 2024, the Court ordered counsel for Defendant Williams to file a copy of his objections and answers to Plaintiff's interrogatories since they were not attached either to Plaintiff's motion or to Defendant's response brief. Defendant now has done so (Dkt. 60) and the Court has reviewed that document. The Court agrees that Defendant's objections and answers to Plaintiff's interrogatories generally are not improper. Defendant objected to Plaintiff's interrogatories but then went on to answer them subject to those objections. Defendant's objections to Plaintiff's interrogatories are well-taken. The answers are short and perhaps not what Plaintiff expected or wanted, but they are acceptable within the meaning of Federal Rule of Civil Procedure 33. Moreover, several of Plaintiff's interrogatories are not well suited for developing information in the way Plaintiff is using them here, with questions such as, "Is there a reason you ordered plaintiff against the back wall of the cell and placed the cuffed inmate[']s face at plaintiff's feet?; Is there a reason you stood over that inmate and orchestrated a beating in cell 205 of M2?" *See* Defendant's Answer to Plaintiff's First Set of Interrogatories (Dkt. 60, at pg. 3). These interrogatories assume the truth of facts that Defendant denies. Depositions, whether taken orally or by written questions, generally are better suited than interrogatories for obtaining information from opposing parties about their intent or how they would characterize events because, among other reasons, they allow for follow-up inquiry that is not possible with flat or static interrogatories.

---

[2] With respect to other potentially relevant video footage, Defendant said Plaintiff is mistaken that defense counsel, during Plaintiff's deposition, began to play video camera footage of Plaintiff's tier on the day Lemon was brought to Plaintiff's cell, but the then realized the footage was for another case and stopped playing it. (Dkt. 58, pg. 3.) Defendant argues this shows Plaintiff is mistaken about whether video footage other than from body cameras exists. But that argument does not fully address whether video footage of the type Plaintiff has requested exists. It simply indicates that the video footage played at the deposition may not have been relevant to this case.

Plaintiff's Motion, therefore, is denied to the extent he asks the Court to require Defendant to supplement or amend his interrogatory answers or to overrule his objections.[3]

Accordingly, for all the reasons stated above, Plaintiff's motion to compel is denied except to the extent that Defendant, through counsel, shall redouble his efforts to determine whether video footage of the events alleged by Plaintiff in this case exists other than body camera footage and report back as to the result of those efforts in the parties' next joint status report.

It is so ordered.

Jeffrey T. Gilbert
United States Magistrate Judge

Dated: May 3, 2024

---

[3] The Court recognizes that Plaintiff is in custody at the Cook County Jail and that it is much easier for him to issue written discovery requests than to take depositions. In this case, however, Plaintiff has the means to take oral depositions and he is in the process of making arrangements to do so while he is in custody. The Court previously has expressed its appreciation to Cook County Sheriff's Office Deputy General Counsel Khara Coleman for assisting Plaintiff and Defendants in his various cases in arranging these depositions, and it does so again here.